UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-cv-00202-LLK

**RUBY ANN CUTLIP**                                                                                              **PLAINTIFF**

**v.**

**KILOLO KIJAKAZI, Acting Commissioner of Social Security**                         **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claims for Disability Insurance Benefits under Title II of the Social Security Act. Plaintiff's memorandum in support of motion for summary judgment is at Doc. 19-1, the Commissioner's response in opposition is at Doc. 26, and Plaintiff's reply brief is at Doc. 30. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [Doc. 16].

Plaintiff makes four arguments. Because the arguments are unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, this Opinion will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

### The ALJ's decision

In concluding that Plaintiff is not disabled through the April 20, 2020 decision date, the ALJ followed the 5-step sequential evaluation process, which applies in all Social Security disability cases. First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 8, 2018, when she alleges that she became disabled. [Administrative Record, Doc. 15 at 12]. Second, the ALJ found that Plaintiff suffers from the following severe, or vocationally significant, impairments: fibromyalgia, diabetes mellitus with neuropathy, hypertension, degenerative disc disease, and morbid obesity. *Id.* Third, the ALJ found that Plaintiff's impairments do not satisfy the medical criteria of any impairment listed in Appendix 1 of the regulations. *Id.* at 14.

As in any case that advances beyond Step 3, the ALJ determined Plaintiff residual functional capacity (RFC). The ALJ found that Plaintiff can:

> … perform light work as defined in 20 CFR 404.1567(b) except she should never climb ladders, ropes or scaffolds … can occasionally climb ramps and stairs … can frequently stoop, kneel, crouch and crawl. … needs to avoid concentrated exposure to vibrations, unprotected heights and dangerous machinery.

[Doc. 15 at 15].

Fourth, the ALJ concluded that Plaintiff is not disabled through the April 20, 2020 decision date because she is capable of performing past relevant work as a deli clerk. *Id.* at 21. The ALJ did not reach the fifth and final step.

### Plaintiff's first argument is unpersuasive.

Plaintiff's first argument is that "[t]he ALJ failed to properly evaluate the medical opinion evidence consistent with Agency authority and Sixth Circuit precedent." [Doc. 19-1 at PageID.706-15].

In February 2019, Plaintiff was examined at the request of the Commissioner by Lori DiSabatino, APRN [advanced practice registered nurse]. [Doc. 15 at 413]. Nurse DiSabatino found that, notwithstanding her impairments, Plaintiff can "do basic work activities such as standing, lifting, sitting, carrying, handling of objects, hearing, speaking, avoid ordinary hazards in the workplace or home, traveling, and normal ability to reason and make occupational, personal and social adjustment." *Id.* at 415. The ALJ found that, while the ALJ "is not persuaded to find no work limitations [as Nurse DiSabatino suggested], the findings of the [DiSabatino] consultative examination and the opinion would not preclude light work, which warrants finding the opinion somewhat persuasive." *Id.* at 20. Plaintiff does not object to the ALJ's discounting of Nurse DiSabatino's opinion of no severe impairment.

In March and June of 2019, in light of Nurse DiSabatino's findings and the record as a whole, the Commissioner's non-examining program physicians found that, notwithstanding her impairments, Plaintiff can perform medium work. [Doc. 15 at 79. 91, 94]. The ALJ found that, "given new and material evidence received at the hearing level, the undersigned finds medium exertional work excessive." *Id.* at

2

20. Plaintiff does not object to the ALJ's discounting of the opinions of the program physicians that she can perform medium work.

In August 2019, Plaintiff's primary care provider at Elkton Clinic, Rosa Langley, APRN, completed the Medical Assessment of Ability to Do work-Related Activities (Physical) form, finding, among other things, that, due to her impairments, Plaintiff can lift "nothing greater than gallon of milk," can stand/walk for no more than 15 minutes before needing to sit and rest, can sit for nor more than 30 minutes before needing to get up and move, and would likely be absent from work as a result of the impairment or treatment more than four days per month.  [Doc. 15 at 460, 462].  The ALJ found that the limitations opined by Nurse Langley "are greater than can be supported by the examination findings, the claimant's level of medical treatment and her positive response to medication management" and further found that Nurse Langley's findings are "most consistent with the claimant's subjective complaints, which are not fully persuasive." *Id.* at 20.  Plaintiff objects to the ALJ's discounting of the foregoing findings of Nurse Langley.  According to Plaintiff, a proper deference would have restricted her to sedentary work, resulting in an ultimate finding of disability at Step 5 of the sequential evaluation process, pursuant to direct application of Rule 201.09 of Appendix 2 of the regulations.  [Doc. 19-1 at PageID.709, 717].

Plaintiff filed her application for benefits in November 2018.  [Doc. 15 at 10].  Therefore, the old rules for weighing medical opinions at 20 C.F.R. § 404.1527 do not apply.  *Compare* 20 C.F.R. § 404.1527(c)(2) (2020) ("For claims filed before March 27, 2017, the rules in this section apply."), with 20 C.F.R. § 404.1520c (2020) ("For claims filed on or after March 27, 2017, the rules in this section apply.").

Under the new rules, "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources." 20 C.F.R. § 404.1520c(a).  The ALJ need only explain how she considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion.  20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations

3

presented, the more persuasive the medical opinion(s) will be. 20 C.F.R. § 404.1520c(c)(1). The more consistent the medical opinion(s) is with the evidence from other medical and nonmedical sources, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(2). The ALJ may, but is not required to, explain how she considered the other remaining factors in paragraphs (c)(3) through (c)(5) when articulating how she considered the medical opinions. 20 C.F.R. §§ 404.1520c(b)(2)-(3).

Plaintiff's argument is unpersuasive because it fails as a threshold matter. Specifically, the opinions of Nurse Langley that Plaintiff seeks to rely upon are unclear and ambiguous. Nurse Langley's responses to certain questions on the physical assessment form related to how long Plaintiff can sit and stand/walk at one time and in total during an 8-hour workday indicate she did not understand the questions **(responses emphasized)**:

> II. Is standing/walking affected by impairment? Yes.
>
> If "yes" how many hours in an 8-hour workday can the individual stand and/or walk, total? **Only about 15 min. – has difficulty just with standing long enough to prepare meals.**
>
> Without interruption? **No – has to sit and rest every 10-15 minutes.**
>
> What medical findings support this assessment? **Polyneuropathy (G62.9) Fibromyalgia (M79.7).**
>
> III. Is sitting affected by impairment? **Yes.**
>
> If "yes" how many hours in an 8-hour work day can the individual sit, total? **Approximately 30 mins.**
>
> Without interruption? **No – has to get up and move when pain in back legs begins.**
>
> What are the medical findings that support this assessment? **Polyneuropathy (G62.9) Fibromyalgia (M79.7).**

[Doc. 15 at 460]. Possibly, Nurse Langley meant simply that Plaintiff requires a sit-stand option, which is not necessarily disabling.

Even if Plaintiff's argument does not fail as a threshold matter, the ALJ was not required to defer to the foregoing opinions of Nurse Langley because because the mere diagnosis of polyneuropathy and fibromyalgia does not support the limitations opined. On the contrary, the "mere diagnosis of [an

impairment] ... says nothing about the severity of the condition." *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013).

### Plaintiff's second argument is unpersuasive.

Plaintiff's second argument is that "[t]he ALJ's RFC finding, that omits a walker-related limitation, is contrary to law and not supported by substantial evidence." [Doc. 19-1 at PageID.716-19].

In February 2019, Plaintiff was examined at the request of the Commissioner by Lori DiSabatino, APRN. [Doc. 15 at 413]. Nurse DiSabatino observed that Plaintiff had normal gait and could get on and off the exam table without assistance. *Id.* at 414. Nurse DiSabatino noted that Plaintiff "reports using a walker however this was not prescribed by a provider. I do not feel it is medically necessary. She is not using her walker at today's visit." *Id.*

In December 2019, Plaintiff's primary care provider at Elkton Clinic, Rosa Langley, APRN, prescribed a walker for ambulation due to severe neuropathy and falls:

> Dx [diagnosis]:        Severe neuropathy
>                        Falls
> Walker for ambulation
>
> R. Langley, APRN

[Doc. 15 at 546].

The ALJ found that the "treatment notes from Elkton Clinic fail to support deficits in gait that would warrant an ambulatory assistive device." [Doc. 15 at 18]. The ALJ was "not persuaded to find that the claimant requires a walker due to severe neuropathy given her positive response to gabapentin." *Id.* at 21. The ALJ expressed skepticism regarding Plaintiff's testimony of "falling two to three times a week" as "there is no evidence of treatment for injuries as a result of a fall." *Id.* at 19.

Social Security Ruling (SSR) 96-9p identifies two requirements for finding that a hand-held assistive device (such as a walker) is medically required:

> To find that a hand-held assistive device is medically required, there must be medical documentation [1] establishing the need for a hand-held assistive device to aid in walking or

5

> standing, and [2] describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9p, 1996 WL 374185, at *7.

Neither Nurse Langley's prescription nor her treatment notes satisfy the above requirements. First, there is no adequate documentation of the need for the walker. Like the plaintiff in *Carreon v. Comm'r*, 51 F. App'x 571 (6th Cir. 2002), Plaintiff may have wanted a hand-held assistive device as a sort of "insurance" policy against falls, 51 F. App'x at 575, or for some other reason that was not strictly medical reason. Nurse Langley may have simply accommodated her patient's wishes. As in *Carreon*, the record fails to reflect more than a subjective desire on the part of the claimant to use the device. *Id.* Second, there is no description of the circumstances under which the walker is allegedly needed. "[D]ocumentation describing the circumstances for which [the device] is needed is critical to establishing that it qualifies as a necessary device." *Meagher v. Comm'r*, No. 3:20-CV-02502-JRK, 2021 WL 5925778, at *9 (N.D. Ohio Nov. 30, 2021) (collecting authorities).

"Where [as in the present case] there is conflicting evidence concerning the need for [an assistive device], it is the ALJ's task, and not the Court's, to resolve conflicts in the evidence." *Hess v. Comm'r*, No. 1:20-CV-01599-JDG, 2021 WL 2815854, at *17 (N.D. Ohio July 6, 2021). As in *Carreon*, because the device "was not a necessary device for [Plaintiff's] use, it cannot be considered an exertional limitation, 51 F. App'x at 575, reducing Plaintiff's ability to do light work.

### Plaintiff's third argument is unpersuasive.

Plaintiff's third argument is that "[t]he ALJ's credibility assessment is generally defective because of the above errors, and specifically so because she neglected to consider Plaintiff's stellar [28-year] work history." [Doc. 19-1 at PageID.720-21].

Plaintiff persuasively argues that, generally, a long, reliable work history, is a reason to believe a disability claimant as "it is unlikely someone would trade in their productive, and lucrative, work career

6

for the far less lucrative 'career' of receiving disability benefits." [Doc. 19-1 at PageID.720]. While Plaintiff's 28 years of virtually uninterrupted work is impressive, it does not change the fact that she apparently quit her last job for non-medical reasons, i.e., to be closer to her oldest son and grandchildren in Kentucky. [Doc. 15 at 19].

### Plaintiff's fourth argument is unpersuasive.

Plaintiff's fourth argument is that "[t]he decision in this case, by an ALJ and Appeals Council AAJs [administrative appeals judges] who derive their authority from the Commissioner [Andrew Saul] that was not constitutionally appointed, is constitutionally defective, requiring remand." [Doc. 19-1 at PageID.721-23 supplemented by Plaintiff's reply brief at Doc. 30].

Andrew Saul served as Commissioner from June 17, 2019, until July 9, 2021. The ALJ issued the Commissioner's final decision in this case during Saul's tenure on April 20, 2020. [Doc. 15 at 22]. Andrew Saul became Commissioner pursuant to 42 U.S.C. § 902(a). Section 902(a)(3) provides, "An individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." *Id.* The Commissioner concedes that Section 902(a)(3) violates separation of powers because it limits the President's authority to remove the Commissioner without cause. [Doc. 26 at PageID.805]. The parties disagree as to whether these facts require a remand for a new decision. For the reasons below, a new decision is not warranted.

The head of the Federal Housing Finance Agency (FHFA) labored under an unconstitutional removal provision that was similar to the one under which Saul labored. *Collins v. Yellen*, 141 S. Ct. 1761 (2021). But that fact did not create a "basis for concluding that any head of the FHFA lacked the authority to carry out the functions of the office" or that actions taken by the FHFA are void. *Id.* at 1787-88. Similarly, the fact that the ALJ decided Plaintiff's disability claim while Saul labored under an unconstitutional removal provision does not mean that Saul lacked authority to carry out the functions of his office -- much less that it rendered the ALJ's decision void. In other words, Plaintiff's constitutional

challenge fails because she "has not described compensable harm due to the unconstitutional removal provision in § 902(a)(3) under which Saul served as Social Security Commissioner." *Lynch. v. Comm'r*, No. 1:21-CV-00556-JDG, 2022 WL 614777, at *17 (N.D. Ohio Mar. 2, 2022); *see also Bryan L. v. Comm'r*, 2022 WL 537577, at *6 (S.D. Ohio Feb. 23, 2022) (collecting authorities for the proposition that "courts across the country have uniformly concluded that the allegedly unconstitutional nature of § 902(a)(3) does not require remand" in Social Security disability cases).

### Order

Plaintiff makes four arguments. Because the arguments are unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, the Court hereby AFFIRMS the Commissioner's final decision and DISMISSES Plaintiff's complaint.

March 15, 2022

Lanny King, Magistrate Judge
United States District Court